MARY V. KILLOREN, administratrix, *vs.* FRANCES M. HERNAN & another.

Suffolk.    March 7, 1939. — April 24, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Equity Jurisdiction*, Exoneration. *Pledge. Surety. Agency*, Termination.

Authority given by an instrument in writing to a bank to receive certain securities of the signer as collateral in pledge from a third person "until further notice in writing from me," terminated at the death

of the signer, and securities of the signer in the possession of the bank under the instrument at the time of the death could not be made collateral for an additional loan made thereafter by the bank to the third person although it did not know of the death.

Upon the facts appearing in a suit in equity by the administratrix of the estate of the owner of securities pledged by his authority to secure one debt of the pledgor, and attempted to be pledged without the decedent's authority to secure a second debt of the pledgor to the same creditor, securities of the pledgor being pledged to secure both debts, a final decree properly adjudged that the pledge of the decedent's securities was for the first debt only and that the pledgee should first apply all the pledgor's securities to that debt and should resort to the decedent's securities only for such balance thereof as might remain after the application.

BILL IN EQUITY, filed in the Superior Court on October 4, 1936.

After a report by a master, the suit was heard by *Kirk*, J., and by his order there were entered an interlocutory decree overruling exceptions to and confirming the report, and a final decree adjudicating, so far as material to this decision, in substance as follows: (1) That two described paid up coöperative bank shares were property of the plaintiff and never had been pledged by her intestate; (2) that the defendant Hernan was indebted to the defendant trust company on two notes: one dated March 26, 1936, in the principal sum of $1,234.97, and one dated April 21, 1936, in the principal sum of $700; (3) that, if the defendant Hernan did not pay the amount due on the two notes, the trust company should sell certain securities by her pledged to secure them and apply the proceeds first to the payment of the earlier note, and, if a surplus then remained, apply so much as was necessary to pay the later note, and if a surplus still remained, apply to the court for further instructions; (4) that the plaintiff's collateral should not be held directly or indirectly for the $700 note but only for so much of the $1,234.97 note, if any, as was not satisfied by sale of the Hernan collateral, and that recourse should not be had to the plaintiff's collateral for that note until the Hernan collateral was exhausted.

Both defendants appealed from both decrees.

*C. B. Cross*, for the defendant Hernan.

*J. S. Whipple,* for the defendant State Street Trust Company.

*W. A. Rollins,* for the plaintiff.

RONAN, J.  This bill is brought to exonerate from the lien of a pledge certain stocks, bank shares and a check, which were deposited by the plaintiff's intestate with the State Street Trust Company, hereinafter called the company, for the accommodation of the defendant Hernan. The intestate in October, 1929, pledged these securities, or others for which the present securities have been substituted, when the company had requested the defendant Hernan to furnish more security upon her loan account. She contends that this security was given to her by the intestate; that they had engaged upon a joint enterprise; that his estate is liable for a part of the losses sustained; and that the estate is also indebted to her for damages which she incurred in following his advice and in relying upon his promise that, if she did not liquidate her account with the company, he would reimburse her for any loss she might suffer.  The company contends that it has the right to hold the collateral, which was pledged by both the intestate and the defendant Hernan, for the satisfaction of her two outstanding notes, and that two paid-up shares of a coöperative bank and a check were included in this collateral.  The master has set forth in his report numerous financial transactions of the intestate and the defendant Hernan with each other and with the company; their relationship, and engagement of marriage in 1928; his presents to her; the circumstances under which he pledged his property, and his purpose and intent in aiding her; their conversations with each other and with others concerning the collateral; the correspondence with the company respecting her account and the consequent conduct of both the intestate and the defendant Hernan in reference to her account; the acquisition by her of an accident policy as security to him for any loss that he might sustain on account of the pledge; the substitution of collateral and the disposition of that which had been released; the various memoranda made by him concerning the collateral, which

in some instances were written long after the events they purported to record; the failure of the intestate to require her to close the account; his changed attitude toward her during the last few years of his life; and the securing by her of a loan of $700 on the strength of the collateral held by the company, on the day following the death of the intestate, when she knew that he had died and knew that, if she informed the company of his death, "she probably would not be allowed to increase her loan." The activities of the intestate in dealing with the coöperative bank, which finally resulted in the issue of two paid-up shares and a check, both of which the company contends are included in the collateral, are fully narrated in the report. The case required careful weighing of evidence and accurate evaluation of testimony. The subsidiary findings of the master are numerous and apparently complete. They are consistent with each other and with the ultimate findings made by him. There is nothing in the report that would warrant our drawing any inferences that would support a conclusion different from that reached by the master upon the facts reported by him. His conclusions that the intestate made no gift of his collateral security to the defendant Hernan, that he did not agree to reimburse her for any losses she might suffer from continuing to carry the account, that the estate is not indebted to her, and that two shares of bank stock and the check are not held by the company as collateral, must be sustained. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431.

There was no error in confirming the master's report, nor in overruling the exceptions of the defendants which in the main were based upon alleged errors in findings of the master or upon his failure to make certain findings. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151. *Morin* v. *Clark*, 296 Mass. 479.

The governing principles of the common law have been frequently applied by this court in actions at law when a defendant, standing in the position of a surety or a *quasi* surety, has contended that the creditor should have applied the security pledged for the debt or sued the principal

debtor on his personal obligation before the surety could be called upon to pay. It is established in this Commonwealth that, in the absence of any agreement limiting the application of the security, a creditor is free to proceed in the first instance against the surety for the collection of his debt and is not required to exhaust every or any other remedy before doing so. *Allen* v. *Woodard,* 125 Mass. 400. *Wilson* v. *Bryant,* 134 Mass. 291. *Burnham* v. *Windram,* 164 Mass. 313. *Hervey* v. *Rawson,* 164 Mass. 501. *Olds* v. *City Trust, Safe Deposit & Surety Co.* 185 Mass. 500. *Mercantile Guaranty Co.* v. *Hilton,* 191 Mass. 141. *Miller* v. *Levitt,* 226 Mass. 330. *Tourtellotte* v. *Saulnier,* 267 Mass. 361. *Silverstein* v. *Saster,* 285 Mass. 453. It is equally well established that a creditor holding collateral security for the payment of several loans may apply the proceeds in such manner as will be most beneficial to him. *Richardson* v. *Washington Bank,* 3 Met. 536. *Wilcox* v. *Fairhaven Bank,* 7 Allen, 270. *Fall River National Bank* v. *Slade,* 153 Mass. 415. *Boston Safe Deposit & Trust Co.* v. *Manning,* 211 Mass. 584. *Exchange Trust Co.* v. *Hitchcock,* 249 Mass. 547. *Thibert* v. *Morello,* 277 Mass. 286. In all such instances, the principal debtor has no power to direct the creditor as to the manner in which the collateral shall be applied and the surety is equally lacking in such power. It may be that one reason for permitting the creditor full power to employ all available remedies for the collection of his debt is that the surety can protect himself by paying the creditor and by being subrogated to his rights as against the principal debtor. *Wilson* v. *Bryant,* 134 Mass. 291. *Washburn* v. *Hammond,* 151 Mass. 132.

The plaintiff, however, has not paid the claims of the company. She does not seek any remedy by subrogation. She is endeavoring to have her property relieved, in part at least, from being applied by the company in satisfaction of its claims. It is clear that, since the intestate has permitted the defendant Hernan to pledge his property for her sole benefit, his administratrix could, in equity, compel her to pay the debt if she is financially able, and thus release the property of the estate from the pledge. *Browne*

v. *Bixby*, 190 Mass. 69. *Cotting* v. *Otis Elevator Co.* 214 Mass. 294. *Fitcher* v. *Griffiths*, 216 Mass. 174. *Ricker* v. *Ricker*, 248 Mass. 549. *Atlas Finance Corp.* v. *Trocchi*, 302 Mass. 477.

The company contends that the plaintiff cannot maintain her bill against it for the exoneration of her property, and relies on the common law principles to which we have already referred. The company holds the plaintiff's property as security for the payment of a note of the defendant Hernan dated March 26, 1936, and for a second note dated April 21, 1936, and actually delivered when the loan was made on May 25, 1936, the day after the death of the intestate. The authority of the company to hold the plaintiff's property as security for the payment of the second note is to be determined by the provisions of a written permission to pledge which was given to the company by the intestate. *Agricultural National Bank of Pittsfield* v. *Brennan*, 295 Mass. 325. This instrument was to continue in force and effect until it was revoked in writing by the intestate* and since he reserved the right to revoke at will it was terminated by his death. *Hyland* v. *Habich*, 150 Mass. 112. *First National Bank of Boston* v. *McGowan*, 296 Mass. 101. The written instrument to pledge was not operative when the defendant Hernan secured the second loan from the company, and the plaintiff's property cannot be applied to its payment. The estate is not to be held liable for an obligation that was not outstanding at the time of the death of the intestate, even if the company did not know of his death when it made this loan. *Jordan* v. *Dobbins*, 122 Mass. 168. Am. Law Inst. Restatement: Contracts, §§ 35 (f), 44, 48.

As between the defendant Hernan and the company, the latter, having advanced money in reliance upon the security, can look to her collateral for its payment, but it cannot charge the plaintiff's property with the payment of this second loan, and should not be permitted in effect

---

* The language of the instrument in this particular was as follows: "You are hereby authorized and requested to accept and receive, until further notice in writing from me, from . . . the pledgor, as collateral security . . ." described securities. — REPORTER.

to do so by depleting the collateral of the defendant Hernan to the prejudice of the plaintiff, by applying it in the first instance to this second loan. A surety should not be harmed by any agreement between the creditor and the principal debtor which, without his consent, lessens the amount of security pledged against the liability or increases his risk by practically withdrawing other security belonging to the debtor and making it security for the payment of another loan. *Guild* v. *Butler*, 127 Mass. 386. *Beacon Trust Co.* v. *Robbins*, 173 Mass. 261. The plaintiff might not be able, in the absence of a suit seeking relief by subrogation, to protect herself by paying the first note and obtaining all the collateral, including that pledged by the principal debtor, *North Avenue Savings Bank* v. *Hayes*, 188 Mass. 135, and so enforce her rights against the defendant Hernan if the company should insist that it would be necessary for the plaintiff to purchase both notes in order to obtain all the collateral. Recourse to equity for exoneration may be had when there is no present remedy at law. *Broadway National Bank of Chelsea* v. *Hayward*, 285 Mass. 459, 465. There was not only a dispute as to the indebtedness for which the intestate's property was pledged, but there was also a controversy between the estate and the defendant Hernan, as each claimed ownership of that property. In view of the claim of the defendant Hernan, if she objected, the company might not be willing to deliver to the plaintiff, upon payment of the notes, all the collateral. In the next place, there was a difference between the estate and the company as to whether certain shares of a coöperative bank and a check were subject to the lien of the pledge. We need not consider whether the facts present a case where all three parties have distinct rights or interests, which cannot be definitely settled in a single action at law and which by virtue of the statute are cognizable in equity. G. L. (Ter. Ed.) c. 214, § 3 (3). *Evans, Coleman & Evans, Ltd.* v. *Pistorino*, 245 Mass. 94. *Security Co-operative Bank* v. *McMahon*, 294 Mass. 399. All necessary parties are before the court and their rights can be conveniently ascertained, established and enforced

in the present suit. *Fitcher* v. *Griffiths*, 216 Mass. 174, 177. *Kinney-Coastal Oil Co.* v. *Kieffer*, 277 U. S. 488, 507.

Under the peculiar facts, we think that the plaintiff is entitled to maintain the bill for the purpose of liberating her property or so much of it as is not required to pay the first note after the collateral of the defendant Hernan has been applied in satisfaction of this note. The value of the collateral of this defendant is not shown by the master's report, but we infer that it may be insufficient to pay this note in full. It does not appear that the security held by the company is not readily salable, or that the company will be delayed or inconvenienced in effecting payment of this note. The plaintiff ought not to assume any greater burden in seeking relief by exoneration than if she protected her rights by subrogation. In the latter case she could not be compelled to pay the second loan in order to secure all the collateral, and in the former case her right to exoneration cannot be limited or curtailed on account of this second loan. She is entitled to the priority and preference granted her by the final decree. *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189. *Glades County* v. *Detroit Fidelity & Surety Co.* 57 Fed. (2d) 449. *Pinckney* v. *Wylie*, 86 Fed. (2d) 541. *Oden* v. *Valentine*, 220 Ala. 626. *Robbins-Sanford Mercantile Co.* v. *Johnson*, 166 Ark. 330. *Sturdyvin* v. *Ward*, 336 Ill. 594. *Matthews* v. *Matthews*, 128 Maine, 495.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*